

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY C., | Case No.: 3:23-cv-01076-JES-AHG |
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW** |
| v. | |
| MARTIN O'MALLEY, Commissioner of Social Security, | |
| Defendant. | **[ECF No. 16]** |

This matter comes before the Court for a Report and Recommendation ("R&R") on the parties' Joint Motion for Judicial Review (ECF No. 16) regarding Plaintiff's appeal of the final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. Plaintiff brings his appeal pursuant to 42 U.S.C. § 405(g).

After a thorough review of the parties' submissions, the administrative record, and applicable law, the undersigned recommends that the Court **REVERSE** the Commissioner's denial of disability insurance benefits and **REMAND** this action for further proceedings consistent with this opinion.

## I. PROCEDURAL BACKGROUND

On July 14, 2020 (with an effective filing date of July 13, 2020), Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act, alleging disability beginning February 1, 2017. *See* ECF No. 9-2, Certified Administrative Record ("AR") 161-62. Plaintiff's application was initially denied on August 21, 2020, and denied again upon reconsideration on October 6, 2020. AR 69-93. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on October 16, 2020, and a hearing was held before the ALJ on April 29, 2021. AR 111-12, 40-68.

On June 22, 2021, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled as defined by the Social Security Act from his alleged onset date of February 1, 2017 through the date of the decision, and accordingly denying disability insurance benefits. AR 23-35. The Appeals Council affirmed the ALJ's decision on September 19, 2022, making the ALJ's opinion the final decision of the Commissioner. *See* AR 5-9; 42 U.S.C. § 405(h). On February 13, 2023, Plaintiff requested an extension of time to seek judicial review of the Commissioner's decision, which the Appeals Council granted on May 22, 2023, giving Plaintiff a deadline of June 25, 2023 to file a civil action. AR 1-4. On June 8, 2023, Plaintiff timely commenced the instant appeal seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1.

## 2. <u>SUMMARY OF ALJ'S FINDINGS</u>

The ALJ first determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. AR 28. Accordingly, the relevant period for the ALJ's disability analysis was the alleged disability onset date of February 1, 2017 through the date of the decision on June 22, 2021. Thereafter, the ALJ performed the required five-step sequential evaluation process governing DIB claims under the Social Security Act: (1) whether the claimant is involved in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that is "severe"; (3) whether the claimant's impairments meet or equal one of the listed impairments; (4) whether the claimant can still perform his past relevant work given his residual functional capacity despite his impairment(s); and (5) if the claimant cannot perform past relevant work,

whether the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4).

At step one of the five-step process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since his alleged disability onset date of February 1, 2017. AR 29. *See also* 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." C.F.R. § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit." C.F.R. § 404.1572(b).

At step two, the ALJ must determine whether Plaintiff has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). A "severe" impairment is one that significantly limits physical or mental ability to do basic work activities. *Id.* The ALJ concluded the Plaintiff had the following "severe" impairments: degenerative disc disease of the lumbar spine, spondylosis of the cervical spine, diabetes mellitus, obesity, and carpal tunnel syndrome bilaterally. AR 29.

At step three, the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I ("the listings"). The listings describe impairments that the Social Security Agency ("SSA") considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant's impairment may also be considered "medically equivalent" to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). If a claimant's impairments meet or medically equal any of the listings, the ALJ will find the claimant disabled. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings, noting that he had considered the criteria of listing 1.15, listing 11.14, and listing 9.00, as well as the functional limitations caused by Plaintiff's

3:23-cv-01076-JES-AHG

diabetes mellitus and obesity in combination with his other impairments in accordance with SSR 14-2p and SSR 19-2p. AR 31.

Before considering whether Plaintiff can perform past relevant work at step four, the ALJ must first determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC is ". . . the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). A claimant's RFC is based on all relevant evidence in the case record. *Id.*

Based on his evaluation of the medical and opinion evidence in the record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [Plaintiff] can lift, carry, push, and pull up to 20 pounds occasionally, 10 pounds frequently; can stand and/or walk 6 hours, and sit 6 hours in an 8-hour workday with normal breaks; can occasionally climb ramps and stairs, ropes, ladders, scaffolds, balance, stoop, kneel, crouch, and crawl; can frequently handle and finger bilaterally; and would need a cane to ambulate for long distances (which is defined as anything outside of the immediate work area.)

AR 31. Light work is defined under the regulations as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Further, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id.*

At step four, the ALJ had to determine whether, given his RFC, Plaintiff could perform his relevant past work. *See* 20 C.F.R. § 404.1520(f); AR 33. Plaintiff's past relevant work included the occupations of (1) Farmer; (2) Maintenance Mechanic, Engine; (3) Shipping and Receiving Supervisor; (4) various Marine Corp jobs, including Operating Engineer, Infantry Unit Leader, and Instructor. AR 33. Based on the testimony of the vocational expert ("VE") at the April 19, 2021 hearing on Plaintiff's disability application,

the ALJ found that Plaintiff's RFC would make him unable to perform any of his past relevant work. AR 34; *see also* AR 60-63 (testimony of the vocational expert that Plaintiff cannot perform any of his past relevant work because the Farmer and Mechanic positions are classified as heavy work both as actually and generally performed, the Shipping and Receiving Supervisor job would require too much moving around outside the immediate work area, and all of the Marine Corp jobs are composite jobs that cannot be considered on a standalone basis).

Having concluded at step four that Plaintiff could not perform his past relevant work, the ALJ proceeded to step five, where the burden shifts to the ALJ to show that Plaintiff can perform other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). Here, based on the VE testimony and Plaintiff's RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, including the jobs of Cashier, Inspector Hand Packager, and Assembler of Plastic Hospital Products. AR 34-35. Consequently, the ALJ found Plaintiff not disabled at step five.

### 3.    STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied, and, if so, the Court must affirm the Commissioner's decision. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether the Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green*

*v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

### 4.  <u>DISCUSSION</u>

Plaintiff raises four grounds for reversal in the Joint Motion for Judicial Review: (1) the ALJ did not properly evaluate Plaintiff's mental impairment at step two of the disability evaluation process, because he failed to document the application of the psychiatric review technique required by 20 C.F.R. § 404.1520a(e)(4); (2) the ALJ's RFC determination does not adequately account for all limitations caused by Plaintiff's physical and mental impairments; (3) the ALJ improperly rejected Plaintiff's subjective symptom testimony; and (4) the ALJ improperly discounted the medical opinion of Plaintiff's mental health counselor John Bucholtz (PhD, MSW) regarding Plaintiff's mental limitations.

### A. <u>The ALJ's step two evaluation of Plaintiff's mental impairments and consideration of Dr. Bucholtz's medical opinion</u>

Plaintiff's first claim of error is that the ALJ erred at step two of the disability evaluation by finding that Plaintiff's post-traumatic stress disorder ("PTSD") is not a severe impairment without properly documenting the application of the psychiatric review technique required by 20 C.F.R. § 404.1520(a)(e)(4). ECF No. 16 at 3-7. Because this claim

of error is intertwined with the ALJ's analysis of Dr. Bucholtz's opinion, which Plaintiff challenges in his fourth claim of error, the Court will discuss both issues together.

As discussed above, the ALJ must consider the medical severity of a claimant's impairments at step two, and must determine whether the claimant has any "severe impairments," which are defined as impairments or a combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities, and which have lasted or are expected to last for a continuous period of 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 404.1509. "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs," which include but are not limited to physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b)(1)-(6).

To evaluate **mental** impairments specifically at step two, the ALJ applies a "special technique[.]" *See* 20 C.F.R. § 1520a(a)-(c). At the first step of the technique, the ALJ evaluates the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable impairment [or impairments]." 20 C.F.R. § 1520a(b). If the ALJ identifies any medically determinable mental impairments, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [the] findings" in the written decision. *Id.*

At the second step of the technique, the ALJ must then "rate the degree of functional limitation resulting from the impairment(s)" in accordance with 20 C.F.R. § 1520a(c), which sets forth four "broad functional areas" in which the ALJ must rate the degree of the claimant's functional limitation. These four broad areas of mental functioning include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, and maintaining pace; and (4) adapting and managing oneself. *Id.* Degrees of limitations in each of these four areas are mapped onto a five-point scale:

none, mild, moderate, marked, and extreme. *Id.* At the first two levels of review, this technique is documented in a Psychiatric Review Technique Form ("PRTF"). 20 C.F.R. § 1520a(e). However, the ALJ must also document his findings about the degree of the claimant's functional limitations in his written decision. 20 C.F.R. § 1520a(b); *see also id.* § 1520a(e)(4) ("[T]he written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the [four] functional areas.").

If the ALJ finds that the claimant's limitations in all four areas of mental functioning are "none" or "mild," the ALJ "will generally conclude" that the claimant's mental impairment or impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 1520a(d)(1).

The step two inquiry is a "de minimis screening device" used to screen for groundless claims. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). At step two, the ALJ must consider the "combined effect of all of the claimant's impairments, without regard to whether each alone was sufficiently severe." *Id.* at 1159. The claimant's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler,* 756 F.2d 693, 694–95 (9th Cir. 1985)). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that 'has no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290; (quoting SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28, 1985 WL 56856, at *3).

Even if the Court finds it was error for the ALJ to find a claimant's mental impairments non-severe at step two, such an error may be harmless where the ALJ proceeds to step five of the disability analysis and considers the claimant's mental impairments as part of that analysis. *Davenport v. Colvin*, 608 F. App'x 480, 481 (9th Cir. 2015) (upholding the ALJ's determination that the plaintiff's mental impairments were non-severe at step two, but noting that "any error regarding the step-two determination is harmless" in any event, "because the ALJ proceeded to step five and considered [the plaintiff's] mental impairments as part of the analysis"). However, for such an error to be harmless, the ALJ must have considered how the combination of the claimant's impairments affect his or her ability to perform basic work activities, and must incorporate that consideration into the RFC determination. *See Smolen*, 80 F.3d at 1290-92 (finding reversible error where the ALJ found a severe impairment of scoliosis at step two and proceeded through the full five-step sequential evaluation, but, because the ALJ found the claimant "suffer[ed] from only one 'severe' impairment at step two, the ALJ necessarily failed to consider at step five how the combination of her other impairments . . . affected her [RFC].") . *See also* SSR 85-28, 1985 WL 56856, at *3 ("Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered.").

Here, at step two, the ALJ first found that Plaintiff's medically determinable impairment of PTSD "do[es] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [is] therefore non-severe." AR 29. The ALJ stated in a cursory fashion that, "[i]n making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments. These four broad functional areas are known as the 'paragraph B' criteria." AR 29 (internal citation to the Listings omitted). However, the ALJ did not explain what those four broad functional areas are. *Id.* The ALJ did explain that he reached the conclusion that Plaintiff's PTSD was

non-severe by reviewing the prior administrative medical findings from the two state agency psychological consultants, which the ALJ found persuasive, and by reviewing the medical opinion from Plaintiff's treating therapist John Bucholtz, which the ALJ found not persuasive. AR 30. After summarizing those three medical opinions and stating how persuasive he found them, the ALJ concluded:

> Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe (20 CFR 404.1520a(d)(1)).

AR 30.

The Court finds that the ALJ's step two analysis fell short of his obligation to "document the ALJ's application of the [psychiatric review] technique" and to "include a specific finding as to the degree of limitation in any of the four functional areas." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011). This error requires remand. Nowhere in the analysis does the ALJ mention any of the four broad functional areas by name or make specific or explicit findings as to the degree of limitation in each of them. Indeed, although the Commissioner states in the Joint Motion that the ALJ "reasonably determined that these mental impairments 'cause[d] no more than 'mild' limitation in any of the four functional areas[,]'" the Commissioner has inserted the word "four" here. *See* ECF No. 16 at 8. The ALJ in fact failed to even state that there are four broad functional areas, let alone "make an explicit finding as to each of the four functional areas as required under 20 C.F.R. § 404.1520a(e)." *Keyser*, 648 F.3d at 726; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1077–78 (9th Cir. 2007) (finding that an ALJ complies with the requirements of 20 C.F.R. § 1520a(c)(3) if he "rate[s] the degree of functioning in four areas: activities of daily living, social functioning, concentration, persistence, or pace; and episodes of decompensation" and that the ALJ "clearly met this requirement by rating and assessing [the claimant's] limitations in each of these four functional areas.").

As discussed above, the relevant regulation requires the ALJ's written decision to "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and to "include a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 1520a(e)(4). The Ninth Circuit has made clear that "the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Keyser*, 648 F.3d at 726. Although the ALJ opinion may contain a "narrative rationale" rather than the "checklist" of conclusions documented in a PRTF, if the ALJ does not append the PRTF to the written decision, he must somehow document the application of the technique by including specific findings as to the degree of limitation in each of the four functional areas. *Id.* Because the ALJ here did not rate and assess the four broad functional areas of mental functioning or otherwise incorporate the mode of analysis of the PRTF into his findings and conclusions, remand is required. *Id.*

In arguing that the ALJ satisfied the requirements of the regulations, Defendant notes that district courts in the Ninth Circuit "have upheld ALJ findings at this step of the sequential analysis when they listed the findings and supported them through a discussion of evidence and incorporation of opinions or prior administrative medical findings addressing these four functional areas." ECF No. 16 at 9 (citing *Sandoval v. Saul*, No. 19-CV-1477-WVG, 2020 WL 4347514, at *20 (S.D. Cal. July 28, 2020)). However, in *Sandoval*, the ALJ provided the following documentation of the psychiatric review technique in the underlying decision:

> The first functional area is understanding, remembering, or applying information. In this area, the claimant has a mild limitation. The next functional area is interacting with others. In this area, claimant has a mild limitation. The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has a mild limitation. The fourth functional area is adapting or managing oneself. In this area, the claimant has a mild limitation.

*Id.* The *Sandoval* court rejected the plaintiff's argument that the ALJ "should have elaborated on and explained his findings as to the four broad functional areas in 20 C.F.R. § 404.1520a(c)(3)[,]" explaining that the ALJ "clearly met the requirements" of the regulations "by making explicit findings as to each of the four functional areas." *Id.* However, the ALJ did not do that in his analysis here. There is no discussion or specific finding regarding each of the four functional areas in the ALJ's opinion. Therefore, *Sandoval* is clearly distinguishable from the case at hand.

Defendant also argues that the ALJ met the requirements of the psychiatric review technique because he "analyzed and offered reasons for finding the [state agency consultative examiners'] assessments about no more than mild functional limitations persuasive." ECF No. 16 at 9. However, in *Keyser*, the Ninth Circuit found reversible error where the ALJ's decision "simply referenced and adopted the [psychiatric review technique form] completed earlier by Dr. Lahman[,]" rather than documenting the ALJ's own application of the technique and including specific findings as to each of the four functional areas. *Keyser*, 648 F.3d at 726. Therefore, merely incorporating the state agency consultants' findings in each of the four functional areas is not sufficient to meet the requirements of the regulations.

Defendant's argument is essentially that the ALJ's statement that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas[,]" when coupled with a discussion of the state agency consultants' medical opinions that did properly address these four functional areas, constitutes "specific findings as to the degree of limitation in each of the four functional areas" as required. ECF No. 16 at 9. Even if the Court agreed with this argument, however, the ALJ's rationale for finding the consultants' medical opinions more persuasive than Dr. Bucholtz's opinion is not supported by substantial evidence, as raised in Plaintiff's fourth claim of error.

In evaluating the persuasiveness of a medical opinion, an ALJ must consider the medical source opinion's supportability, its consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's

knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. 20 C.F.R. § 404.1520c(c)(1)–(c)(5). Although the ALJ is required to consider all factors listed in the regulation, he need only explain in the written opinion how he considered the most important factors – supportability and consistency – when determining a medical source's persuasiveness, unless two conflicting medical sources are both equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)–(3). Supportability examines the relevant objective medical evidence and supporting explanations presented by the source. 20 C.F.R. § 404.1520c(c)(1). Consistency examines the evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). An ALJ must explain his analysis of a medical opinion as persuasive or not persuasive. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings.") (quoting 20 C.F.R. § 404.1520c(b)).

An ALJ's decision to discredit any medical opinion "must simply be supported by substantial evidence." *Woods*, 32 F. 4th at 787; *see also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (explaining how an ALJ weighing a medical opinion must provide an explanation supported by substantial evidence, which articulates how they considered supportability and consistency); *Sloane S. v. Kijakazi*, No. 21cv1043-MMA-MSB, 2023 WL 2017284, at *4 (S.D. Cal. Feb. 15, 2023). ALJs must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to determine whether that reasoning is supported by substantial evidence. *Titus L.S. v. Saul*, No. 20cv04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)). The Ninth Circuit has indicated that ALJs should attempt to use these terms "with precision." *Woods*, 32 F.4th at 793 n.4.

Dr. Bucholtz submitted a Mental Residual Functional Capacity Assessment dated July 23, 2020, in which he noted that he had been Plaintiff's treating therapist from March 2017 to the present, seeing Plaintiff on a biweekly basis. AR 906-09. Dr. Bucholtz assessed

Plaintiff's limitations as "marked" or "extreme" in all but one area of functioning within the four broad areas of mental functioning, including "marked" limitations in the three areas of functioning associated with understanding and memory, "marked" or "extreme" limitations in the eight areas of functioning associated with sustaining concentration and persistence, "marked" and "extreme" limitations in the five areas of functioning associated with social interaction, and "marked," "moderate," and "extreme" limitations in the five areas of functioning associated with adapting and managing oneself. AR 907-09. Dr. Bucholtz further opined that Plaintiff would need to miss 20 days of work per month due to his mental impairment. AR 909.

The ALJ's entire rationale for finding Dr. Bucholtz's opinion not persuasive was as follows:

> [T]here are extensive notations of treatment visits with this source [] found in Exhibit 7F. Yet, these records do not contain detailed analysis of treatment recommendations or of complaints during these treatment visits of the same level needed to justify this medical opinion. Doctors assessed claimant with normal mental status exams (Exhibit 2F/98-104). The claimant's normal presentation does not support the claimant's allegations made in this medical opinion. Therefore, this medical opinion is not persuasive.

AR 30.

After finding the opinion not persuasive at step two, the ALJ did not mention it again in his RFC analysis. *See generally* AR 31-33. Therefore, the above paragraph is the full extent of the ALJ's analysis of the persuasiveness of Dr. Bucholtz's opinion. This explanation of why the ALJ found Dr. Bucholtz's opinion unpersuasive is not supported by substantial evidence. The ALJ does not adequately address the supportability and consistency of the opinion, and the sparse rationale the ALJ does provide is contradicted by the record.

The first reason given by the ALJ to discount the opinion is that Dr. Bucholtz's treatment notes "do not contain detailed analysis of treatment recommendations or of complaints . . . of the same level needed to justify this medical opinion." AR 30. Although it is not stated explicitly by the ALJ, the Court construes this reason as speaking to the

supportability of the opinion, since it relates to the relevant objective medical evidence and supporting explanations presented by the source. *See* 20 C.F.R. § 404.1520c(c)(1). However, Dr. Bucholtz's treatment records do reflect significant PTSD symptoms including insomnia, concentration and memory issues, interference with the ability to perform at work and school, irritability and anger problems, nightmares, flashbacks, hypervigilance, isolation, and avoidance behaviors. Specifically, Plaintiff first presented to the San Marcos Vet Center where he was treated by Dr. Bucholtz on March 4, 2017, stating that his wife had "pushed me to finally get some help" because he had "been this way ever since coming back from Iraq and she wants me to start dealing with my issues." AR 1001. At that time, he had recently lost his job and reported suffering from "sleep issues, hypervigilance, isolation and avoidance [behaviors], anger issues both at work and at home with his wife and kids, etc." AR 1001. During Plaintiff's first evaluation with Dr. Bucholtz, the doctor noted "[s]trong indications of PTSD" based on his responses to a particular PTSD checklist for military service members called the PCL-M. AR 999. Other treatment notes from the relevant time period of alleged disability document that Plaintiff "has nightmares where he yells and expresses emotion on his face although his eyes are closed," sleepwalks, has flashbacks, experiences depression "and often will chain smoke staring off into the distance," AR 998, has anger and insomnia issues that affect his relationships, AR 953, sometimes wakes up shouting and kicking, AR 993, has difficulty sleeping and was observed as appearing "not to have slept" or "very tired and anxious" or at certain appointments, AR 955, 972, 993, 997, often feels isolated, AR 994, has difficulty concentrating and performing at work and school due to PTSD symptoms and struggles with loss of energy from depression and a cycle of shame, as well as irritability and memory issues, AR 962, 969, 972, 988, and displays hyperarousal symptomology and other behavior consistent with survivors of combat trauma, AR 983. Additionally, the treatment records repeatedly state that Plaintiff's PTSD symptoms are exacerbated by pain from his back injuries sustained in combat, AR 944, 947, 950, 954, 960, 964. Plaintiff was prescribed antidepressants due to his mood fluctuations. AR 967.

Therefore, the ALJ's first reason for rejecting Dr. Bucholtz's opinion as unpersuasive—that the doctor's treatment records "do not contain detailed analysis of treatment recommendations or of complaints" of the "same level needed to justify this medical opinion"—is not supported by substantial evidence. Not only is this reasoning vague as to what type of treatment recommendations or complaints would "justify" the doctor's opinion, but the records at issue do indeed contain detailed descriptions of complaints over the more than four years that Plaintiff was treated by Dr. Bucholtz that reflect severe PTSD symptoms. And, to the extent the ALJ meant that the treatment records do not show complaints "of the same level" needed to justify Dr. Bucholtz's recommended mental limitations because Plaintiff's PTSD symptoms waxed and waned over time (although the ALJ did not expressly state such rationale), the Court notes that the Ninth Circuit has "emphasized while discussing mental health issues" that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Therefore, even giving the ALJ the benefit of the doubt in parsing the first reason given for discounting Dr. Bucholtz's opinion as lacking supportability in the treatment records, the Court finds this reason is not supported by substantial evidence.

The second reason given by the ALJ to discount Dr. Bucholtz's opinion is that "[d]octors assessed claimant with normal mental status exams." AR 30 (citing Exhibit 2F/98-104). The Court understands this reason as an evaluation of the consistency of the opinion with the evidence from other medical sources. 20 C.F.R. § 404.1520c(c)(1). However, the record citation given by the ALJ here is to a 16-minute telephonic appointment Plaintiff had with a nurse practitioner, in which a single mental status examination was documented. AR 406-09. A single telephone call with a nurse practitioner is not the same as multiple "doctors" assessing Plaintiff with "normal mental status exams[,]" as stated by the ALJ. Moreover, the mental status exam at issue documents

observations about Plaintiff's appearance and eye contact that would not be possible to obtain via a telephone call, indicating that that portion of the treatment notes is not reliable. AR 409. The ALJ's claim that "doctors" assessed Plaintiff with normal mental status examinations (rather than a single examination) is thus not only a mischaracterization of the record cited, but it also does not meet the admittedly low bar of the "substantial evidence" standard as a basis to discount the opinion of a doctor who had treated Plaintiff for PTSD for over four years on a bi-weekly basis at the time he submitted his opinion. The nurse practitioner's treatment note is a snapshot of Plaintiff's mental health symptoms on a single day that the ALJ appears to have cherry-picked in order to contradict years' worth of other record evidence regarding the severity of Plaintiff's mental health symptoms. The Ninth Circuit has cautioned against "cherry-picking" treatment records to mischaracterize "the overall diagnostic record." *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ "improperly cherry-picked" physician's characterizations of the claimant's rapport and demeanor instead of considering these factors in the context of the doctor's diagnoses and observations of the claimant's mental impairments). *See also Henderson v. Saul*, No. 2:19-CV-00028-NJK, 2020 WL 774360, at *4 (D. Nev. Feb. 18, 2020) ("An ALJ must review the record as a whole and is not permitted to mischaracterize that record by 'cherry-picking' aspects in an effort to support a finding of non-disability.").

To be clear, the ALJ was not required to give full weight to Dr. Bucholtz's opinion or to adopt the full range of mental limitations recommended by Dr. Bucholtz into Plaintiff's RFC. Notably, throughout the course of his treatment with Dr. Bucholtz, Plaintiff often reported that his life circumstances were well-managed and never reported suicidal or homicidal ideation. Additionally, as argued by the Commissioner on appeal, Plaintiff did state to the nurse practitioner with whom he had the telephonic appointment that he "denies depression or anxiety" and "feels he is doing well right now." AR 406, 409. Therefore, the Court emphasizes that its recommendation to remand this action for further proceedings is not based on a conclusion that the limitations recommended by Dr. Bucholtz

should necessarily have been adopted in full. However, in considering whether the ALJ properly rejected the opinion, the Court is limited to reviewing the reasons given by the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"). Here, the ALJ's assessment of the supportability and consistency of Dr. Bucholtz's opinion does not meet the admittedly low "substantial evidence" threshold, because his stated reasons are vague and rely on mischaracterizations of the record.

In sum, the ALJ did not properly document the psychiatric review technique at step two as required by the regulations. That error alone warrants reversal and remand. Moreover, even if the Court accepts the Commissioner's argument that the ALJ complied with the regulations by incorporating by reference the opinions of the state agency consulting examiners regarding Plaintiff's degree of limitation in each of the four broad areas of mental functioning—which is at odds with *Keyser*—the ALJ's rationale for finding those opinions more persuasive than the medical opinion of Dr. Bucholtz falls short of the substantial evidence standard. Accordingly, remand for a proper step-two evaluation of Plaintiff's mental impairments is required.

## B. <u>Whether the errors were harmless</u>

The Court also finds that the ALJ's errors were not harmless. The ALJ's RFC determination did not include any mental limitations, and his explanation of the evidence supporting his RFC assessment did not again mention his consideration of the limitations caused by Plaintiff's PTSD. The ALJ must consider all of a claimant's medically determinable impairments in determining the RFC, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Thus, for a step-two error to be harmless, the ALJ must have considered how the combination of the claimant's impairments affect his ability to perform

basic work activities, and must incorporate that consideration into the RFC determination. *See Smolen*, 80 F.3d at 1290-92.

Here, the ALJ's incorporation of his step-two findings into the later RFC assessment, without specifying "reasons supported by substantial evidence" for not including any mental functional limitations stemming from Plaintiff's non-severe mental impairments, necessarily resulted in an erroneous RFC determination. *See Medlock v. Colvin*, No. 15-cv-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) (explaining that, as long as the ALJ "actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment" in the RFC determination, "the ALJ has not committed legal error."). As a result, the Court cannot find that the error was harmless.

## C. Plaintiff's other claims of error

Because the ALJ's step-two error requires remand for further consideration of the severity of Plaintiff's mental impairment of PTSD, the Court need not reach Plaintiff's other claims of error. In particular, it is unnecessary to address Plaintiff's claim of error regarding the ALJ's RFC determination given that a proper evaluation of Plaintiff's mental limitations on remand may result in a different RFC altogether. *See, e.g.*, *Jessica B. v. Comm'r of Soc. Sec.*, No. C23-6000-MLP, 2024 WL 2844619, at *4 (W.D. Wash. June 5, 2024) (finding error at step five regarding the ALJ's determination that the plaintiff could perform a certain job, and declining to reach the other issues because "on remand the ALJ's reassessment of Plaintiff's testimony and the lay witness statements may result in a different RFC."). Indeed, if Dr. Bucholtz's opinion is credited on remand, the incorporation of his recommended mental limitations into the RFC would compel a finding of disability at step three, because a person with marked limitations in two areas of mental functioning or an extreme limitation in one area of mental functioning would satisfy the paragraph B criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part-A2, 12.00A.2.c ("To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning").

However, the Court will address Plaintiff's claim of error regarding the ALJ's treatment of his subjective testimony in order to provide further guidance to the agency on remand.

### D. **The ALJ's treatment of Plaintiff's subjective testimony**

Plaintiff argues the ALJ erred by rejecting Plaintiff's subjective testimony regarding the severity of his symptoms based on Plaintiff's daily activities. An ALJ evaluating a claimant's subjective complaints of pain must follow a two-step inquiry. *Ghanim*, 763 F.3d at 1163. First, the ALJ must assess whether there is objective medical evidence to support the complaints. *Id.* "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. Second, if the claimant meets the first test, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). The ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).[1]

---

[1] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 404.159. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, No. 20-35114, 2021 WL 1105192, at *2 (9th Cir. Mar. 23, 2021) (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, No. 19-36115, 2021 WL 1041708, at *1 (9th Cir. Mar. 18, 2021) (same, in case involving an ALJ's opinion issued in January 2019). *See also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017)

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his symptoms, satisfying the first step of the inquiry. AR 32. The ALJ found no evidence of malingering. In order to avoid error, then, the ALJ was required to state specific, clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms. *Austin v. Saul*, No. 19-35670, 2020 WL 7399004, at *2 (9th Cir. Dec. 17, 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015)). At step two of the inquiry, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 32. The Court will summarize Plaintiff's subjective symptom testimony before addressing the reasons asserted by the ALJ in turn.

### i. *Plaintiff's subjective testimony*

Plaintiff completed a Function Report in connection with his disability application, in which he stated that the pain in his lower back, neck, and shoulders make it "very difficult to do anything. AR 224. He reports he cannot walk far without getting winded, has difficulty bending to pick things up, and that his hands go numb and start to hurt when he attempts to write or do anything with his hands. Plaintiff further reports pain going down both legs causing knee pain. AR 225. He reported that his impairments affect his sleep because the pain makes it difficult to get comfortable, and that he has difficulty with personal care such as dressing, bathing, caring for his hair, and shaving because his hands go numb and he has difficulty washing his back and bending to put socks and shoes on. AR 225. He stated that he still does some chores including light yard work, cleaning, laundry, mowing, minor household repairs, projects in the garage, and cooking or preparing meals daily, and that he tries to stay active. AR 225-26. However, these tasks take twice as

_____

(noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

long as they used to because he becomes winded, and he needs help picking things up, pushing, pulling, and lifting. AR 226. He reported that he drives and shops in stores, and that his hobbies include watching television, playing games, and woodworking, although he can only do small woodworking projects for short periods of time. AR 228. He reported difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, climbing stairs, completing tasks, and using hands, and elaborated that he can only lift about 25 pounds and can only walk about 30-45 feet before needing to take a break for approximately a minute, depending on his pain level, and that he also needs to stop frequently when using his hands. AR 229. He uses a cane to walk. AR 230. He reported that he follows written and spoken instructions and gets along with authority figures very well, and that he can pay attention for several hours at a time. AR 229. He reported struggling at times with handling stress. AR 230.

During the hearing before the ALJ, Plaintiff similarly testified that he has severe back pain making it difficult to stand, sit, or walk for long, as well as issues with his hands routinely going numb. AR 51. His arms and hands go numb when driving. AR 56. He testified that he has difficulty walking up stairs due to the pain in his back and knees, as well as difficulty getting up if he has to bend over. AR 55. His wife has to help him wash his back while bathing because he cannot reach it, and he has difficulty standing to get out of chairs. AR 55-56. He uses a cane due to balance issues and pain. AR 56. He stated he has difficulty sleeping and concentrating due to the pain and gets winded very easily when doing tasks like dressing or tying his shoes. AR 51. He testified that "all [his] neurosurgeons recommend[] back surgery" and that he had had surgery on both of his knees and right shoulder that was "now causing pain on top of everything else." AR 52-53. He rated his daily pain level as between an eight and nine on a ten-point scale and testified that treatments including physical therapy, steroid injections, nerve blocks, chiropractic treatment, and acupuncture had not worked to relieve the pain. AR 56. Plaintiff testified he takes medication for depression and PTSD and goes to counseling biweekly with Dr. Bucholtz. AR 54. He stated that loud explosions or bangs would trigger his PTSD

symptoms and it would take him some time to recover, and that his mental health symptoms had reduced his drive and affected personal relationships. AR 57. He stated that stress caused by financial problems has affected his mental state to the point that he clenches his teeth at night, causing pain in his jaw and difficulty sleeping AR 58. As for symptoms caused by diabetes, Plaintiff testified he sometimes gets lightheaded and dizzy, which had "been happening quite a bit and the doctors have been playing with my medication" because the medication he was previously prescribed was not working. AR 55.

### ii. Conservative treatment

After finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely consistent with the medical evidence and other evidence of record[,]" the ALJ discussed certain record evidence that presumably formed the basis of that finding. AR 32.

First, the ALJ addressed Plaintiff's lumbar spine impairments, noting that these impairments have been present since around 1991 when Plaintiff suffered a back injury during a training exercise. AR 32. The ALJ noted that treatment for Plaintiff's symptoms included physical therapy, medications such as Gabapentin, a home exercise program, and acupuncture, but not surgical intervention as the neurosurgeons consulted noted that surgery was not recommended, even as of April 2021. AR 32. The ALJ further stated that Plaintiff's diabetes was treated with medications, including a reduction in the dose of his medication. AR 32.

Although Plaintiff does not raise this argument in the section of the Joint Motion related to Plaintiff's subjective symptom testimony, in his argument regarding the ALJ's RFC determination, he refutes the ALJ's assertion that "surgery was not recommended." See ECF No. 16 at 15-16. Specifically, Plaintiff points to treatment notes from his doctor Daniel R. Cleary on February 19, 2021, stating that he "would likely benefit from a fusion, but discussed need for medical optimization first." AR 1040. Dr. Cleary also noted that they had a "[l]ong discussion about goal A1c: <7 prior to consideration of surgery" and that his A1c level would be checked on April 1 with a follow-up appointment around April

8. AR 1040. Therefore, Plaintiff asserts that the only reason surgery was not recommended was due to his diabetes symptoms and the ALJ thus "mischaracterized the record and failed to consider the full diagnostic picture when evaluating [Plaintiff's] lumbar spinal impairment[,]" and in any event, a lack of surgical intervention "does not indicate the absence of pain and does not negate [Plaintiff's] complaints." ECF No. 16 at 16.

Defendant responds that the ALJ reasonably translated the medical findings regarding Plaintiff's lumbar spine impairment into an RFC that accounted for limitations that were supported by the record evidence, including by limiting Plaintiff to light work with other exertional limitations related to that impairment, and that the ALJ properly relied on evidence showing that Plaintiff maintains full motor strength and intact sensation to light touch to discount Plaintiff's testimony regarding the severity of his symptoms. *Id.* at 20.

### iii. Objective medical evidence of record

Next, the ALJ addressed Plaintiff's cervical spine impairment and carpal tunnel syndrome, noting that radiographs and imaging scans confirmed the presence of degenerative disc disease in the cervical spine, and that Plaintiff was diagnosed with bilateral carpal tunnel syndrome based on Plaintiff's complaints of pain, numbness, and tingling in the upper extremities. AR 32. However, the ALJ noted that Plaintiff "continued to present with normal strength and sensation intact to light touch in the upper extremities." AR 32.

The ALJ also discussed Plaintiff's and his wife's testimony that Plaintiff is limited in his ability to perform personal care activities and some chores given his lower back pain, but found that because "the full medical evidence of record shows the claimant maintains full motor strength and intact sensation to light touch," Plaintiff has "a greater physical capacity than noted by these two individuals." AR 32. Additionally, the ALJ reiterated that he found persuasive the opinions of the two state agency consultants, who opined that Plaintiff had exertional limitations consistent with the ALJ's ultimate RFC determination, and who supported their conclusions with the evidence that Plaintiff "continued to present

with normal motor strength and sensation intact to light touch despite the allegations made." AR 33. Thus, based on the evidence that Plaintiff "maintains full strength despite all of the allegations of limited movement and pain" and had "normal presentation[,]" the ALJ found Plaintiff's limitations were not as significant as alleged. AR 33.

Plaintiff characterizes the ALJ's discussion on this point as a rejection of Plaintiff's statements based on Plaintiff's daily activities, which he claims was in error because the ALJ failed to explain how his daily activities are inconsistent with his symptom testimony. ECF No. 16 at 24-25. Plaintiff argues that the ALJ failed to make specific findings regarding his daily activities and their transferability to a work setting, as necessary to support an adverse credibility determination. *Id.* at 25-26. Additionally, Plaintiff points to objective MRI findings that support his complaints of pain and limitations, including lumbar spine imaging that revealed degenerative disc disease and spondylosis of the lumbar spine with nerve root compression at the C5, C6, and C7 nerve roots. *Id.* at 27 (citing AR 1030).

The Commissioner responds by arguing that the ALJ reasonably found that not all of Plaintiff's allegations were consistent with the evidence, and that the ALJ never relied on Plaintiff's daily activities as a basis to discount his subjective symptom testimony. ECF No. 16 at 28-30. Additionally, Defendant asserts that the ALJ properly rejected Plaintiff's allegations by citing reports of effective treatment. *Id.* at 29 (citing 20 C.F.R. § 404.1529(c)(3)(iv) (listing the "type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms" as one of the factors relevant to a claimant's symptoms, such as pain, that the agency will consider); and *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability.")).

The Court finds that both Plaintiff and Defendant miss the mark in their discussion of the ALJ's treatment of Plaintiff's subjective symptom testimony. The Court agrees with the Commissioner that the ALJ did not rely on evidence regarding Plaintiff's activities of daily living to reject his testimony. Rather, the ALJ first summarized Plaintiff's and his

wife's own reports of the limitations caused by Plaintiff's impairments on his daily activities, before concluding that their reports were inconsistent with "the full medical evidence of record show[ing] the claimant maintains full motor strength and intact sensation to light touch, which shows a greater physical capacity than noted by these two individuals." AR 32. Therefore, the ALJ did not discount either Plaintiff's testimony or his wife's third-party testimony based on Plaintiff's activities of daily living. He discounted their testimony based on medical records showing that Plaintiff maintained full motor strength and intact sensation to light touch. The Court should accordingly reject Plaintiff's claim of error on this point.

Nonetheless, the ALJ's reliance on medical evidence showing that he maintained "full motor strength and intact sensation to light touch" does not constitute a clear and convincing reason to reject Plaintiff's subjective symptom testimony. The ALJ cites to the records located at AR 1029-1030 for the proposition that Plaintiff had full motor strength and intact sensation to light touch. *See* AR 32. These records are from a neurosurgery appointment on April 5, 2021, during which Plaintiff's upper and lower extremities were tested and showed 5/5 strength on every metric in addition to intact sensation to light touch from C5 to T1, which is the radial nerve providing motor strength to the arm muscles, and from L2-S1, which is a portion of the lumbar spine vertebrae down to the top of the sacrum. AR 1029. While the ALJ discusses these findings in connection with his discussion of Plaintiff's carpal tunnel diagnosis as well as his Function Report testimony indicating that he is limited in his abilities to perform personal care activities and some chores, he does not explain how this evidence is inconsistent with Plaintiff's claims of debilitating lower back pain.

"When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original). However, "an ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Id.* at 494-95 (citing *Burch*,

440 F.3d at 681). The Ninth Circuit has recently reaffirmed that this rule from *Smartt* requires the ALJ to "provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original). The ALJ did not explain why the record evidence cited is inconsistent with Plaintiff's subjective symptom testimony here or identify which particular impairments. He merely recited the evidence without explaining which particular testimony of Plaintiff's was contradicted by having full motor strength in his arms and legs and intact sensation. This was error. *See Holohan*, 246 F.3d at 1208 (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); *Ferguson*, 95 F.4th at 1200-01 (finding reversible error where "the ALJ never expressly and specifically stated that [the claimant's] headache symptom testimony was inconsistent with any particular record evidence, as it was required to do[,]" because the record evidence on which the ALJ relied to discount the claimant's testimony showing "'no neurological defects' and a 'normal mood,' at best, provides a reason to discount [the claimant's] testimony about his neurological deficits and mood[,]" but not the testimony about the severity and frequency of his headaches).

The reasons provided by an ALJ for rejecting a claimant's subjective symptom testimony must "be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Here, the Court is not able to determine the specific symptom testimony that the ALJ found inconsistent with the medical evidence he cites. Accordingly, the first reason given by the ALJ for rejecting Plaintiff's subjective symptom testimony does not meet the "clear and convincing" standard.

More importantly, because Plaintiff's most salient complaint regarding his symptoms is that his impairments cause debilitating pain, the ALJ may not reject his testimony "based solely on a lack of medical evidence to fully corroborate the alleged

severity of pain." *Burch*, 400 F.3d at 680. Here, the only other reason given by the ALJ to discount Plaintiff's testimony is that surgery was not recommended for his lumbar spine impairments. As discussed above, Defendant argues the ALJ properly relied on evidence showing that treatments for Plaintiff's lumbar spine impairments were effective as a reason to discount his testimony. However, in making this argument, Defendant mischaracterizes the ALJ's discussion of Plaintiff's treatment. Nowhere does the ALJ state a finding that the treatment Plaintiff received for the symptoms associated with his underlying lumbar spine impairment was effective. *See* AR 32. Rather, the ALJ merely lists the treatment that Plaintiff had received for his spinal impairment, including "physical therapy, medications such as Gabapentin, a home exercise program, and acupuncture," and then notes that the neurosurgeons consulted "noted that surgery was not recommended, even as of April 2021." AR 32. But the ALJ does not state that these less serious interventions were effective. Again, the ALJ cites to the records from Plaintiff's April 5, 2021 neurosurgery appointment here, which document symptoms of "chronic debilitating lower back pain" and MRI findings showing symptoms including compression of Plaintiff's nerve roots at C5, C6, and C7, but note, "would not recommend surgery at this time." AR 1030. However, as Plaintiff points out, treatment notes from approximately 6 weeks earlier on February 19, 2021 show that his neurosurgeon Dr. Cleary believed that Plaintiff "would likely benefit from a fusion" to treat his degenerative disc disease at L5/S1 resulting in endplate edema and causing "severe" lower back pain, but that there was a "need for medical optimization first." AR 1040. Accordingly, Dr. Cleary had a "[l]ong discussion" about the goal of reaching an A1c level lower than 7 before surgery could be considered, and that Plaintiff would work with his primary doctor for better glucose control and follow up around April 8. AR 1040. The same record reflects that Plaintiff had tried physical therapy, electroshock treatment, and other forms of pain control without long-term improvement. AR 1039. Therefore, the ALJ's rationale that "surgery was not recommended" as a basis to discount Plaintiff's complaints of debilitating pain from his lumbar spine impairments does not constitute a clear and convincing reason. And although

Defendant is correct that an ALJ may rely on evidence that medical treatment successfully relieved symptoms in order to discount a claim of disabling impairments, the ALJ did not do so here. Merely listing the treatment options that Plaintiff has tried to treat his pain is not equivalent to a finding that those treatment methods were effective, and to the extent the ALJ intended to imply that they were effective, such a finding is not supported by the record.

Thus, with respect to Plaintiff's testimony regarding the severity of his pain symptoms, even if the Court agreed that the ALJ's citation to record evidence showing full motor strength and intact sensation suffices to "specifically identify the testimony [the ALJ] finds not to be credible" and to "explain what evidence undermines the testimony[,]" *Holohan*, 246 F.3d at 1208, the fact that the ALJ relied solely on a lack of medical evidence to fully corroborate Plaintiff's allegations regarding the severity of his pain would nonetheless constitute reversible error. *Burch*, 440 F.3d at 681. *See also James J. v. Kijakazi*, No. 21-CV-426-E, 2021 WL 8820863, at *4–5 (C.D. Cal. Nov. 16, 2021) (finding an ALJ's reason for rejecting the plaintiff's subjective testimony regarding disabling back pain, including the statement that the plaintiff "had full motor strength of the lower extremities and intact sensation[,]" is "not a legally sufficient reason for discounting plaintiff's testimony and statements" because an "asserted lack of objective medical evidence can be a factor in discounting a claimant's subject complaints, but cannot form the sole basis.") (quotations omitted).

Finally, the Court notes that the ALJ did not discuss any of Plaintiff's symptom testimony regarding the combined effects of all of his medically determinable physical and mental impairments, including non-severe impairments. That oversight also necessarily resulted in a defective RFC, given that Plaintiff testified that his pain not only reduces his physical capabilities but also exacerbates his mental health symptoms. Accordingly, on remand, the agency must provide a more detailed and specific evaluation of Plaintiff's subjective symptom testimony regarding all of his symptoms, including the limiting effects

of both his severe and non-severe physical and mental impairments, and must provide clear and convincing reasons before rejecting any such testimony.

## V. APPROPRIATE REMEDY

It is well-established the Court has discretion whether to remand for further proceedings or for payment of benefits. *See, e.g.*, *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [for an immediate award of benefits] is appropriate." *Id.* Remand for the immediate payment of benefits is also appropriate "where the record has been developed fully and further administrative proceedings would serve no useful purpose[.]" *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds remand for further administrative proceedings is appropriate. The Court cannot say that further administrative proceedings "would serve no useful purpose" where, as here, the errors committed by the ALJ are best characterized as an incomplete analysis requiring a more detailed and precise evaluation of the severity of Plaintiff's impairments at step two, the medical opinion evidence at both step two and in the RFC analysis, and of Plaintiff's subjective symptom testimony in the RFC analysis. Correction of these errors on remand may produce an RFC determination that once more results in a finding of non-disability, but a reviewing court will be better able to follow the rationale underlying the determination. As a result, it is not clear from the record that remand will simply delay an inevitable receipt of benefits.

## VI. CONCLUSION

Based on the foregoing analysis, the Court recommends that the Court resolve the parties' Joint Motion for Judicial Review (ECF No. 16) in Plaintiff's favor, **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings consistent with this opinion.

The Court submits this Report and Recommendation to United States District Judge James E. Simmons under 28 U.S.C. § 636(b)(1). **IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **August 20, 2024.** The document should be captioned "Objections to Report and Recommendation."

**IT IS SO ORDERED**.

Dated: August 6, 2024

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:23-cv-01076-JES-AHG